## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| FARM BUREAU PROPERTY & CASUALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>v.<br><br>JOANN NELSON, BRAD L. NELSON, NELSON BROTHERS, BRAD AND JOANN NELSON FAMILY TRUST, and KENT NELSON,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:24-cv-120-RJS-JCB<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Jared C. Bennett |

Now before the court is Plaintiff Farm Bureau Property & Casualty Insurance Company's Motion for Summary Judgment against Defendants Joann Nelson, Brad L. Nelson, Nelson Brothers, Brad and Joann Nelson Family Trust, and Kent Nelson.[1] For the following reasons, the court GRANTS Farm Bureau's Motion.

### FACTUAL BACKGROUND[2]

This case concerns the employment status of an individual working for Defendants at the time of a job-related accident. Defendants jointly own Nelson Brothers, Inc., a corporation that owns and operates a 530-acre cattle ranch in Myton, Utah.[3] Although Defendants have different ownership stakes in the ranch, the ranch is primarily operated by Kent Nelson.[4] At the time of

---

[1] Dkt. 16, *Motion for Summary Judgment* (*Motion*).

[2] The facts are drawn from the parties' briefing and attached exhibits. *See generally* Fed. R. Civ. P. 56(c). Because this Order resolves a motion for summary judgment, the court "consider[s] the evidence in the light most favorable to the non-moving party." *Duvall v. Georgia-Pac. Consumer Prods., L.P.*, 607 F.3d 1255, 1259 (10th Cir. 2010) (quotation simplified).

[3] *Motion* ¶¶ 1–4, 7.

[4] *Motion* ¶ 2; Dkt. 16-2, *Deposition of Kent Nelson* (*Nelson Deposition*), at 3–4.

the accident, Defendants employed one full-time ranch hand, Samuel Hartle, whom they paid as a W-2 employee.[5]

Kaden Wilkenson started volunteering on Defendants' ranch in the summer of 2021 while he was in high school.[6]  In July 2022, Defendants began paying Wilkenson $10 an hour to perform various tasks on the ranch after school and on the weekends, including feeding the cattle and building or mending fences.[7]  Defendants paid Wilkenson sporadically as a 1099 employee.[8]  Wilkenson used his own horse, truck, and trailer, but for particular tasks he used tools provided by Defendants.[9]  When Wilkenson graduated from high school in 2023, he began to spend more time helping on the ranch for the same wage of $10 an hour.[10]  Wilkenson did not work regularly set hours and also provided help to other farms.[11]

On October 11, 2023, Kent Nelson, Hartle, and Wilkenson were installing water troughs on federal land pursuant to grazing rights.[12]  They built the troughs by digging a hole with a backhoe, leveling the hole, and placing a large tire at the bottom to hold water.[13]  Defendants owned all of the tools and equipment used to install the troughs,[14] but Wilkenson rode his own horse to the trough sites.[15]  Nelson "acted as foreman for the job."[16]  While installing one water

---

[5] *Motion* ¶ 3; Dkt. 17, *Defendants' Opposition to Plaintiff's Motion for Summary Judgment* (*Opposition*) at 2.

[6] *Motion* ¶ 4; Dkt. 16-2, *Deposition of Kent Nelson* at 4.

[7] *Motion* ¶¶ 6–7; *Opposition* ¶¶ 6–7.

[8] *Motion* ¶ 8; *Opposition* ¶¶ 8–9.

[9] *Opposition* ¶ 10; *Motion* ¶ 15.

[10] *Motion* ¶¶ 9–10.

[11] *Opposition* at 2; ¶ 13.

[12] *Motion* ¶ 12; *Opposition* at 2.

[13] *Motion* ¶¶ 12, 14.

[14] *Motion* ¶ 15; Dkt. 18, *Reply Memorandum in Support of Motion for Summary Judgment* (*Reply*) at 3.

[15] *Opposition* at 2.

[16] *Opposition* at 3.

trough, Nelson braced a tire vertically next to the hole while Hartle and Wilkenson leveled the hole for the tire.[17]  While Hartle and Wilkenson were in the hole, the tire slipped off the backhoe and toppled into the hole, hitting Wilkenson.[18]  Wilkenson sustained back injuries from the tire.[19]

At the time of the accident, Defendants maintained a liability policy issued by Farm Bureau.[20]  The Policy contained the following provision for bodily injury liability:

> **Bodily Injury Liability and Property Damage Liability Coverage**
> We cover "damages" that result from "bodily injury" or "property damage" "caused by" an "occurrence" to which these coverages apply.  These coverages apply only to "bodily injury" or "property damage" occurring during the policy period.[21]

The Policy insured "[a]ny 'farm/ranch employee,' for acts within the scope of their employment . . . while performing duties related to the conduct of [the] farm/ranch operation'."[22]  The Policy defined "Farm/Ranch Employee" as: "[a]n employee of yours whose duties are principally in connection with your 'farming/ranching' operations.  This does not include a 'residence employee,' 'exchange help' or an employee while engaged in 'business' other than 'farming/ranching.'"[23]

Although the Policy generally insured farm/ranch employees, it also specifically excluded farm/ranch employees from coverage for bodily injury.  The Policy stated that "[f]arm/ranch employees' are not 'insureds' for 'bodily injury,'"[24] and "[t]here is no coverage

---

[17] *Motion* ¶¶ 16–18.

[18] *Motion* ¶ 20.

[19] *Id.*

[20] *Motion* ¶ 21.

[21] *Motion* ¶ 22; Dkt. 16-4, *Insurance Policy* at 60.

[22] *Insurance Policy* at 61.

[23] *Motion* ¶ 24; *Insurance Policy* at 99.

[24] *Insurance Policy* at 61.

for . . . [d]amage 'arising out of' 'farming/ranching' operations or 'business.'"[25]  The policy also excluded coverage for workers compensation or disability benefits.[26]

On February 17, 2024, Farm Bureau filed a complaint for declaratory relief seeking an order from the court stating Wilkenson was an employee of Defendants at the time of the accident, coverage for bodily injuries arising from the accident is excluded under the Policy, and Farm Bureau has no duty to defend or indemnify in any lawsuit arising from the accident.[27] Farm Bureau subsequently filed a motion for summary judgment on its Complaint.[28]  The Motion is fully briefed and ripe for review.[29]

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[30]  Under this standard, the "existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."[31]  A fact is material if it "might affect the outcome of the suit under the governing law," and a "dispute about a material fact is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[32]

---

[25] *Motion* ¶ 23; *Insurance Policy* at 62.

[26] *Motion* ¶ 26.

[27] Dkt. 1, *Complaint for Declaratory Relief* (*Complaint*).

[28] *See Motion*.

[29] *Opposition*; *Reply*.

[30] Fed. R. Civ. P. 56(a).

[31] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (emphases in the original).

[32] *Id.*

## ANALYSIS

The parties dispute whether, under Utah law, Wilkenson was an employee or an independent contractor at the time of the accident.[33]  In determining employment status, Utah courts apply the "right to control test" anchored in the Utah Workers' Compensation Act.[34]  The Act defines an employee as:

> a person in the service of any employer, . . . who employs one or more workers or operatives regularly in the same business, . . . under any contract of hire[,] . . . not including any person whose employment . . . is casual[] and not in the usual course of the trade, business, or occupation of the employee's employer.[35]

In contrast, an independent contractor means:

> any person engaged in the performance of any work for another who, while so engaged, is: (A) independent of the employer in all that pertains to the execution of the work; (B) not subject to the routine rule or control of the employer; (C) engaged only in the performance of a definite job or piece of work; and (D) subordinate to the employer only in effecting a result in accordance with the employer's design.[36]

"Regardless of how the parties intended to structure their relationship, a worker is considered to have been an employee if the employer had the right to control the worker's manner or method of executing or carrying out the work."[37]  And it is the "*right* to control which is determinative," not the amount of control actually asserted.[38]

---

[33] Defendants contend this presents a genuine issue of material fact precluding summary judgment.  *Opposition* at 6. The facts regarding what, when, and how of the work Wilkenson performed for Nelson Brothers are not in dispute and neither are the facts concerning when and how Wilkenson was paid at the time of the accident.  *See generally*, *Motion*, *Opposition*, *Reply*.  Rather, the parties dispute the legal conclusion the court should draw from those facts regarding Wilkenson's employment status at the time of the accident.  Accordingly, summary judgment is appropriate if no reasonable jury could find Wilkenson was an independent contractor under Utah law.  *See Liberty Lobby*, 477 U.S. at 249 ("[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.").

[34] *See Jensen Tech Servs. v. Labor Comm'n*, 506 P.3d 616, 621 (Utah 2022).

[35]*Id*. (quoting Utah Code Ann. § 34A-2-104(1)(b)).

[36] Utah Code Ann. § 34A-2-103(2)(b)(i).

[37] *Utah Home Fire Ins. Co. v. Manning*, 985 P.2d 243, 246 (Utah 1999).

[38] *Bambrough v. Bethers*, 552 P.2d 1286, 1291 (Utah 1976) (emphasis added).

The Utah Supreme Court decided a factually similar case that is instructive here. In *Averett v. Grange*, Provo City contracted with Geneva Rock to resurface a city street.[39] To complete the project, Geneva contracted with drivers who were supervised by its foreman and paid an hourly wage every two weeks.[40] The contracts provided that Geneva would have the right to supervise and direct the dump truck drivers, but also required the drivers to maintain their own liability and property damage insurance as well as worker's compensation coverage.[41] One of the drivers, Timothy Grange, also performed other duties on site when needed.[42] While working at the job site, Grange accidentally backed a dump truck over the foreman of the Provo project resulting in the foreman's death.[43] The foreman's wife filed a wrongful death complaint against Grange and Grange later moved for summary judgement, contending both he and the foreman were Geneva employees and thus immune from suit under the Workers' Compensation Act.[44] The trial court agreed,[45] and the Utah Supreme Court affirmed, concluding Grange worked under the direction and supervision of Geneva. Specifically, the Court noted Geneva directed "what, when, how, and where the work was to be performed" and that Grange performed other duties as asked.[46] Additionally, Grange was paid an hourly wage, and he was performing the same work as employee-drivers under the direction of the foreman at the time of the accident.[47]

---

[39] *Averett v. Grange*, 909 P.2d 246, 247 (Utah 1995).

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] *Id.*

[44] *Id.* at 248.

[45] *Id.*

[46] *Id.* at 249.

[47] *Id.* at 250.

Here, the court similarly concludes Wilkenson was an employee of Defendants at the time of the accident. Wilkenson did not determine what work he would do for Defendants; rather, he was given tasks at the direction of Kent Nelson.[48] And even though he evidently performed work on other farms, Defendants paid Wilkenson an hourly wage rather than by the job.[49] Nelson directed the installation of the water troughs, including the method and locations.[50] The accident occurred while Wilkenson was working alongside Defendants' full-time employee, using Defendants' tools, on a project which Nelson was overseeing and for which he was ultimately responsible.[51]

Defendants maintain "[t]here is no indication that Defendants exercised control over how he performed [the] work."[52] Defendants emphasize that Wilkenson could help "in any way [he] saw fit," and that no one gave him instructions while installing the water trough; it was Wilkenson himself that "placed himself under the tire."[53] However, Defendants construe "control" too narrowly. An employer need not micromanage every movement of a worker to "retain[] supervision and control of the work to be performed."[54] As stated above, "[i]t is not the *actual* exercise of control that determines whether an employer-employee relationship exists; it is the right to control that is determinative."[55] And here, the undisputed facts demonstrate Defendants had the right to control and direct Wilkenson's work at the time of the accident.

---

[48] *Opposition* ¶¶ 4–7 (stating Wilkenson helped to move cows and give vaccinations, and "Defendants would give Kaden a project to work on and he would go do it."); *Id.* at 8; *Motion* ¶ 7.

[49] *Motion* ¶¶ 6–7, 10.

[50] *Motion* ¶¶ 12–14; *id.* at 7–8; *Opposition* (not disputing *Motion* ¶¶ 12–14).

[51] *Motion* ¶¶ 3, 12–17; *Opposition* ¶¶ 1–2, 11, 15.

[52] *Opposition* at 9.

[53] *Id.* at 11–12.

[54] *Grange*, 909 P.2d at 249 (quoting *Luker Sand & Gravel Co. v. Indus. Comm'n*, 23 P.2d 225, 228 (Utah 1933)).

[55] *Id.* (quoting *Pinter Const. Co. v. Frisby*, 678 P.2d, 305, 309 (Utah 1984)) (emphasis in original).

## CONCLUSION

The court finds that Wilkenson was an employee of Defendants at the time of the accident on October 11, 2023.  Other than contesting Wilkenson's employment status, Defendants do not argue Plaintiff has a duty to defend or indemnify them with respect to any claim arising from Wilkenson's accident.  Accordingly, Plaintiff's Motion for Summary Judgment is GRANTED.[56]  The Clerk of Court is directed to close the case.

SO ORDERED this 8th day of May 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[56] Dkt. 16.